322 F.2d 317
 UNITED STATES of America, Appellant,
v.
Elizabeth Simonson KING, Executrix of the Estate of George Stewart King, Deceased, and National Surety Corp., a corporation of the State of New York.
 No. 14297.
 United States Court of Appeals Third Circuit.
 Argued June 3, 1963.
 Decided September 13, 1963.
 
 Alan S. Rosenthal, John W. Douglas, Acting Asst. Atty. Gen., David M. Satz, Jr., U. S. Atty., Morton Hollander, Mark R. Joelson, Attys., Dept. of Justice, Washington, D. C., for appellant.
 Paul T. Murphy, Crummy, Gibbons & O'Neill, Newark, N. J., for National Surety Corp.
 David S. Bate, Boyd, Dodd, Keer & Booth, Montclair, N. J., for Elizabeth S. King.
 Before BIGGS, Chief Judge, and McLAUGHLIN and GANEY, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 This is an appeal from a judgment dismissing the complaint of the United States on the ground that the evidence fails to support the cause of action alleged.
 
 
 2
 The action was brought by the United States against the executrix of George S. King,[1] a distributing agent for the Seeley Tube and Box Company, a bankrupt in a Chapter XI proceeding, and against National Surety Corporation, the surety on King's bond. The complaint alleges that the United States has a debt entitled to priority pursuant to 11 U.S.C.A. § 104 and Rev.Stat. § 3466, 31 U.S.C.A. § 191[2], against Seeley's assets, that King, as Seeley's distributing agent, paid Seeley's other creditors before attempting to satisfy the priority claim in favor of the United States, and that as a result the bankrupt's assets were depleted so as to prevent full payment to the United States of its claim. The complaint further alleges that King, or his surety to the extent of the bond, is personally liable to the United States for the unpaid portion of the claim under Rev.Stat. § 3467, 31 U.S.C.A. § 192[3].
 
 
 3
 The stipulated facts, as found below by the court below are as follows: On October 1, 1946, Seeley filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. King, the president of the debtor corporation, was appointed distributing agent[4] by an order of the referee filed on March 22, 1947, and he filed a bond in the amount of $10,000 underwritten by the defendant surety company. King's duties were to receive a fund of $160,193.68 deposited by Seeley, deposit the fund in an account subject to the control of the bankruptcy court, and to distribute the fund by checks drawn by him and countersigned by the referee in accordance with orders of distribution to be made by the referee.
 
 
 4
 A hearing on an amended plan of arrangement was held on March 21, 1947. The plan did not contain any "written provisions" for payment of the claim of the United States. However, during the course of the hearing counsel for Seeley admitted that the United States might have a claim as a result of terminated executory contracts between Seeley and Picatinny Arsenal, an installation of the War Department at Dover, New Jersey. Seeley's counsel further stated that $94,000 would be available to pay the Government's claim and that "there will be at all times $20,000 or more available to dispose of that claim, in cash." On April 14, 1947, the referee entered an order directing the United States to file its claim on or before May 9, 1947.
 
 
 5
 On that due date, May 9, 1947, the United States filed a preliminary contingent proof of its claim in the amount of $26,818.82, and alleged that it was a priority creditor. However, during the time between the hearing on March 21, 1947 and the date on which the Government filed its claim, May 9, 1947, King, in his capacity as distributing agent, had paid out all but $6,085.01 of the fund deposited with him[5] to other creditors of Seeley. Each check drawn by King for these other creditors had been issued pursuant to specific court orders and had been countersigned by the referee.
 
 
 6
 On March 30, 1949, the United States amended its claim of May 9, 1947 to $34,125.03, the final allowed amount of the claim. Of the $6,085.01 remaining of the fund in the hands of King, $3,620.39 was paid to the United States and the balance to other creditors.
 
 
 7
 On December 8, 1953, the referee determined that the claim of the United States had been filed in time and that the amended plan of arrangement had been confirmed upon the condition as had been stated by Seeley's counsel, that there would be an adequate sum available to satisfy the claim of the United States. The United States District Court for the District of New Jersey reversed the decision of the referee. In re Seeley Tube & Box Co., 120 F.Supp. 269 (D.N.J.1954). This court reversed the district court and held that "The disclosure by the debtor at the referee's hearing on confirmation of the plan that the Government had become a creditor was * * * in performance of its duty under the Act and amounted to an informal amendment of the list of creditors included in the debtor's schedules." In the Matter of Seeley Tube & Box Co., 219 F.2d 389, 391 (3 Cir., 1955), cert. denied, 350 U.S. 821, 76 S.Ct. 46, 100 L.Ed. 734 (1955).
 
 
 8
 On August 2, 1956, the referee approved King's final report and accounting and discharged both King and the surety. The final amount outstanding on the claim in favor of the United States was $25,831.08 after allowance of proper deductions and credits.
 
 
 9
 On July 3, 1958, the United States commenced the suit at bar against King's executrix for the sum of $25,831.08, the balance outstanding on the claim, and against the surety for $10,000, the amount of its bond. The case was submitted to the district court below, sitting without a jury, upon the stipulated facts. The complaint was dismissed by an order entered on October 8, 1962. In its opinion[6] the court held that 31 U.S.C.A. § 192 did not apply to a distributing agent, and as King's executrix could not, therefore, be liable, the surety must be exonerated as well.
 
 
 10
 It is the position of the United States on this appeal that King, as distributing agent, is within the class of persons on whom personal liability is imposed by 31 U.S.C.A. § 192 to the extent of a priority claim due the United States where such person exhausts or partially exhausts the debtor's fund by paying other creditors before the United States. The pertinent statute, 31 U.S.C.A. § 192, is as follows: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."
 
 
 11
 It appears therefore that the question for our determination is whether a distributing agent in a Chapter XI proceeding is an "executor, administrator, or assignee, or other person," within the meaning of the statute quoted.
 
 
 12
 Sections 191 and 192 of 31 U.S. C.A. must be interpreted in pari materia, as parts of a "common statutory scheme." United States v. Crocker, 313 F.2d 946, 947 (9 Cir., 1963). See United States v. Butterworth-Judson Corp., 269 U.S. 504, 513, 46 S.Ct. 179, 70 L.Ed. 380 (1926). See also United States v. Lutz, 295 F.2d 736, 742 (5 Cir., 1961): "The statutes [§§ 191 and 192] have an historical relation to the early efforts of the founding fathers to make this country a union and not a confederation of states. The precursor of Section 191 was enacted in 1797 to give the government a priority in the recovery of its debts from insolvent persons. When that section was reenacted in 1799 the forerunner of Section 192 was passed as a companion measure. This coincidence of enactment raises an inference that the two provisions should be read together as parts of a single legislative plan. The inference is confirmed by consideration of the operation and effect of Section 192. Construed in conjunction with Section 191, * * * the section promotes obedience to the requirement of Section 191 that government debts be given priority when a corporation is insolvent, and it protects the government's interest when that requirement is violated. It accomplishes this without overshooting the coverage of Section 191 and without burdening business operations except in cases of insolvency, when the government is in danger of being unable to collect its debts. It imposes the danger of personal liability on the corporate officers only at times when because of the shortage in funds they should be alert to the necessity for paying debts according to their priorities."
 
 
 13
 Taken together, then, Sections 191 and 192 impose two requirements both of which must be met if the United States is to prevail in an action such as that at bar. First, the debt owing to the United States must be one afforded priority under Section 191. Secondly, the fiduciary sought to be held personally liable for the debt under Section 192 must be either an "executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate * * *." See United States v. Crocker, supra, 313 F. 2d at 947-948. See also Bramwell v. United States Fid. & Guar. Co., 269 U.S. 483, 490, 46 S.Ct. 176, 70 L.Ed. 368 (1926).[7]
 
 
 14
 That the debt owing from Seeley to the United States is one afforded priority under Section 191 is an issue that requires no extended discussion for the debt is clearly one within the list enumerated in that section. The fact that the United States did not formally file its claim or proof of claim at the hearing on the amended plan of arrangement does not alter the debt's priority status, nor can this factor alter the fiduciary's liability under Section 192. United States v. Kaplan, 74 F.2d 664 (2 Cir., 1935).
 
 
 15
 The second of these two requirements, that is, that the fiduciary sought to be held personally liable for the debt be one within the net of liability cast by Section 192, does not admit of a short answer. We have been unable to find any direct authority on this point where the fiduciary involved is, as in the case at bar, a distributing agent. In two cases involving a somewhat analogous fiduciary, a receiver, conflicting results were reached by two courts of appeals.
 
 
 16
 In United States v. Stephens, 208 F.2d 105 (5 Cir., 1953), a receiver appointed by a state court for an insolvent corporation had exhausted the debtor's fund by paying other creditors in advance of satisfying priority claims due to the United States. The United States commenced suit under Section 192 to hold the receiver personally liable for the debt, but the district court dismissed the complaint on the ground that Section 192 is not applicable to court-appointed receivers. The dismissal of the complaint was affirmed on appeal. The court of appeals pointed out that Section 192 does not specifically refer to a receiver in its enumeration of certain fiduciaries by title, and construed the additional, albeit somewhat vague, designation "or other person" as being "limited to those who stand as personal representatives not only by the application of the principle of ejusdem generis but by the language qualifying `person' as one `who pays in whole or in part any debt due by the person or estate for whom or for which he acts.'" United States v. Stephens, supra, 208 F.2d at 108. (Emphasis in original). The court, asserting that a receiver is an officer or arm of a court acting for and under a court rather than for the debtor, concluded that a receiver is not within the purview of Section 192[8].
 
 
 17
 In United States v. Crocker, supra, the Court of Appeals for the Ninth Circuit arrived at a different result than that reached by the Fifth Circuit in the Stephens case, supra, on similar facts. In Crocker, a receiver appointed by a state court took possession of the debtor's assets and distributed the proceeds of the sale of the assets to other creditors although the receiver knew of the existence of a priority claim in favor of the United States. The complaint filed by the United States against the receiver, alleging personal liability under Section 192, was dismissed by the district court.[9] The Court of Appeals reversed. In a thorough and comprehensive opinion by Judge Browning, the court held that Sections 191 and 192, read together, impose personal liability upon the person to whom control of a debtor's assets has passed after a divestment of the kind specified in Section 191 where such person has knowingly failed to pay a priority debt owing from the debtor to the United States. The court pointed out that the scope of Section 192 is not limited to those classes of fiduciaries specifically enumerated in it, and cited several cases in which fiduciaries outside the statutory enumeration were held personally liable, as, for example, a trustee in bankruptcy.[10] The court in Crocker did not accept the position taken in Stephens, supra, that Section 192 must be construed to encompass only those fiduciaries standing in a personal relationship to the debtor as his or its representative and that, therefore, a receiver, as a representative of the court rather than the debtor, could not be within the scope of the statute. Instead, the court in Crocker asserted: "[T]he debts paid by a liquidating receiver, like those paid by an executor, administrator, or assignee for the benefit of creditors, are primary obligations of the debtor; the phrase `for whom, or for which he acts' should be read as a general acknowledgement of this fact rather than as imposing a restriction upon the reach of Section 192 inconsistent with the overall purpose of this section and Section 191. In terms of the purpose of the two sections, the significant characteristic which persons in the classes named in Section 191 [sic § 192] have in common is not that they represent debtors rather than courts, but rather that they are given possession and control of assets of debtors and are charged with the payment of debtors' obligations. * * * [A]ny `other person' who answers this description is included in Section 192, if the debtor is insolvent." United States v. Crocker, supra, 313 F.2d at 949.
 
 
 18
 The decisions in Stevens and Crocker, supra, are helpful but they cannot be deemed to be determinative of the issue presented by this appeal. The appellees here lay emphasis on the fact that in Crocker the receiver was empowered to operate the debtor's business and did so for about two years. The business was then sold by him and he distributed the proceeds of the sale to creditors other than the United States, albeit he knew of the priority claim asserted by the United States. According to the allegations of the complaint, which had to be taken as true, neither the sale of the assets nor the distribution was authorized or approved by the state court. See 194 F. Supp. 860, 861 (D.Nev.1961). There can be no question that the receiver in Crocker had actual and effective control over the assets of the debtor. In fact, he exercised more control than that ordinarily permitted by law. He had the ability to pay out and did in fact pay out the proceeds to creditors.
 
 
 19
 The appellees also emphasize the decision in Bramwell v. United States Fid. & Guar. Co., supra, 269 U.S. at 490, 46 S.Ct. at 178, 70 L.Ed. 368, in which the Supreme Court construed Sections 191 and 192 to impose personal liability for a priority debt due the United States "when the possession and control of the estate of the insolvent is given to any person charged with the duty of applying it to the payment of the debts of the insolvent * * *." In Bramwell the monies belonging to an Indian tribe had been placed in an Oregon bank and the bank had been placed in the exclusive position and control of the State Superintendent of Banks to be administered according to the Oregon law under which the State Superintendent of Banks performed the functions of assignee, receiver or trustee for the liquidation of the debts of the insolvent bank. Here, of course, the measure of control in the assignee was indeed large for the liquidator, apparently could make distribution without reference to a court order. The appellees point out that in United States v. Crocker, supra, 313 F.2d at 949, the Court of Appeals for the Ninth Circuit stated that "the significant characteristic which persons in the classes named in Section 191 [sic § 192] have in common is * * * that they are given possession and control of assets of debtors and are charged with the payment of debtors' obligations." The appellees assert that the distributing agent was nothing more than an "amanuensis", "A person whose employment is to write from dictation, or to copy what another has written; a secretary." See Webster's International Dictionary. It is the position of the appellees that once the distribution had been established by the orders of the bankruptcy court that precise distribution became immutable, and the distributing agent, King, was bound thereon and was compelled to make distribution according to the distribution sheets or stand in contempt of the bankruptcy court. But the duties of the distributing agent in performing the final function of distribution of a debtor's estate to creditors are not different in any substantial way from those imposed on a receiver in equity, a receiver in bankruptcy, or a trustee in bankruptcy acting under the order of the court which appointed him. Changes in distribution can be effected upon timely application to the court. Negligence is apparent in the situation at bar. Moreover, in the case at bar it should be noted that King was not only the distributing agent but that prior to the Chapter XI proceeding, King was the president of the debtor corporation and well knew or should have known of the unresolved claim of the United States. Indeed, as we have pointed out at an earlier point in this opinion, Seeley's counsel stated that there would be available at all times $20,000 or more to dispose of the claim of the United States "in cash." Putting it plainly, we do not think that the equities here weigh very heavily in favor of King.
 
 
 20
 We point out also that Section 192 is a very old statute. It was derived from the Act of March 2, 1799, 1 Stat. 676, and was designed for one purpose only, to aid in the collection of sums due the United States. It will be observed that the statute is exact in its terms and provides that "Every executor, administrator or assignee or other person * * * who pays * * * any debt due by the * * * estate for * * * which he acts before he * * * pays the debts due the United States from such * * * estate shall become answerable in his own person and estate," for the debt due the United States. There is nothing in the statute as to the "control" of the fund by the disbursing individual. The critical phrase is a very uncomplex one; it is simply he "who pays." It is a statute intended by Congress as a final backstop for the protection of the federal fisc. We conclude that King is personally liable. See Field v. United States, 34 U.S. (9 Pet.) 182, 9 L.Ed. 94 (1834); United States v. Barnes, 31 F. 705, 707 (C.C.S.D.N.Y., 1887). See also United States v. Weisburn, 48 F.Supp. 393, 397 (E.D.Pa., 1943).
 
 
 21
 In reaching this conclusion we are not unmindful that the appellees have asserted a doctrine of estoppel against the United States. In this connection we need say only that estoppel is not available as a defense against the United States.
 
 
 22
 The judgment of the court below will be reversed. The case will be remanded with the direction to enter judgment in favor of the United States in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 King died testate after the commencement of the suit at bar, and his executrix was substituted as a party defendant in his stead pursuant to an order of the court entered on June 15, 1959
 An action by the United States against a fiduciary under Rev.Stat. § 3467, 31 U.S.C.A. § 192 does not abate and survives against his executrix. See United States v. Dewey, 39 F. 251 (C.C.S.D.N.Y., 1889).
 
 
 [2]
 Section 191 of 31 U.S.C.A. provides as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."
 
 
 [3]
 Section 104 of 11 U.S.C.A. provides in pertinent part: "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (5) debts owing to any person, including the United States, who by the laws of the United States in [sic] entitled to priority * * *."
 Section 192 of 31 U.S.C.A. provides as follows: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."
 
 
 [4]
 Section 737 of 11 U.S.C.A. provides in pertinent part: "[T]he judge or referee shall, after the acceptance of the arrangement — (1) appoint the receiver or trustee, if any, or otherwise appoint some other person, to receive and distribute, subject to the control of the court, the moneys and consideration, if any, to be deposited by the debtor; require such person to give bond with surety to be approved by the court * * *."
 
 
 [5]
 King deposted the fund received by him from Seeley with the West Side Trust Company of Newark, New Jersey, and had it credited to his account as distributing agent for Seeley. See King's final petition and report, filed May 3, 1956, attached to the complaint of the United States as exhibit "A"
 
 
 [6]
 United States v. King, 208 F.Supp. 697 (D.N.J.1962)
 
 
 [7]
 The fiduciary must, in addition, have notice of the claim in favor of the United States before making the distribution to the other creditors. Want v. Commissioner, 280 F.2d 777 (2 Cir., 1960)
 
 
 [8]
 The Stephens decision is criticized in 67 Harv.L.Rev. 1274 (1954)
 
 
 [9]
 It should be noted that the district court in the case at bar cited the decision of the district court in Crocker, 194 F.Supp. 860 (D.Nev.1961), in its opinion. The subsequent reversal of that decision by the Ninth Circuit, filed February 15, 1963, was, of course, not available to the court below at the time its opinion was prepared
 
 
 [10]
 United States v. Kaplan, 74 F.2d 664 (2 Cir., 1935)