UNITED STATES of America,
Plaintiff,

v.

Elizabeth Simonson KING, Executrix of
the Estate of George Stewart King, de-
ceased, and National Surety Corp., a
corporation of the State of New York,
Defendants.

Civ. A. No. 749-58.

United States District Court
D. New Jersey.

Sept. 13, 1962.

David M. Satz, Jr., U. S. Atty., By
James D. Butler, Asst. U. S. Atty., for
the Government.

Boyd, Dodd, Keer & Booth, By David
S. Bate, Montclair, N. J., for defendant
King.

Crummy, Gibbons & O'Neill, By Paul
T. Murphy, Newark, N. J., for defendant
National Surety Corp.

WORTENDYKE, District Judge.

This action is against the executrix
of a deceased Distributing Agent for a
bankrupt in a Chapter XI proceeding,
under 11 U.S.C.A. § 701 et seq., to recov-
er the amount of a debt due from the
Debtor to the United States, and also
against the surety upon the Agent's
bond (to the extent of the penalty of
$10,000 thereof). Plaintiff bases its al-
leged right to recover upon the provi-
sions of 31 U.S.C.A. § 192.[1] Plaintiff as-
serts the priority (31 U.S.C.A. § 191) of
its claim against cash assets of Debtor
in the hands of the Agent which were dis-
bursed by the Agent to non-priority cred-
itors of the Debtor. The Agent died tes-
tate, after the commencement of this ac-
tion, and his executrix was substituted
as a defendant in his stead. The case
has been submitted to the Court, sitting

1. This section provides that every "exec-
utor, administrator, or assignee, or oth-
er person, who pays, in whole or in part,
any debt due by the person or estate for
* * * which he acts before he sat-
isfies and pays the debts due to the
United States from such person or es-
tate, shall become answerable in his own
person and estate to the extent of such
payments for the debts so due to the
United States, or for so much thereof
as may remain due and unpaid."

without a jury, upon the following stipulation of facts:

"This stipulation is entered into by and between the United States of America as plaintiff and Elizabeth Simonson King as personal representative of George Stewart King, defendant, deceased, and National Surety Corporation.

"Paul T. Murphy, Esquire, is appearing for National Surety Corporation, and has been authorized by David S. Bate, Esquire, of Boyd, Dodd, Keer & Booth, Esquires, to appear on behalf of the defendant Elizabeth Simonson King for the purpose of making the within stipulation.

"This stipulation is made pursuant to the direction of the Court contained in the pretrial order dated January 3, 1961.

"It is stipulated by and between the parties hereto that the following facts shall constitute the record in the trial of this cause without testimony or proof on behalf of any party, subject to objections, if any, as to materiality and relevancy, and subject to the right of any party to introduce at the trial of the cause any evidence not inconsistent herewith upon five days notice prior thereto to all parties:

"1.   There is jurisdiction in this court by virtue of the status of the plaintiff, the United States of America.  This action was commenced on July 3, 1958.

"2.   On October 1st, 1946, Seeley Tube and Box Company, Inc., a corporation of the State of New Jersey, filed a petition for reorganization under Chapter XI of the Bankruptcy Act (11 U.S.C.).  Pursuant to an order of Referee Cahill entered on March 17, 1947, and filed on March 22, 1947, the deceased George Stewart King was appointed distributing agent and entered into performance of the duties of that office.  On the same date the deceased George

Stewart King filed a bond of the Defendant National Surety Corporation in the amount of $10,000 for the faithful performance of the duties of George Stewart King.  On March 21, 1952, by order of Referee Cahill the bond was reduced to $4,000.

"3.   The claim of Plaintiff United States of America arose out of default of Seeley Tube and Box Company, Inc., under contracts dated June 13 and 24, 1946, with the United States, and represents the excess costs incurred by the United States in completing the contracts. Two letters dated October 11, 1946, were addressed to the debtor by the Ordinance Department, Dover, New Jersey, advising of an intention to terminate the contracts because of default, and on November 18 and 19, 1946, debtor was notified by the Ordinance Department of the termination of the contracts and of the intention to hold the debtor liable for any excess costs.

"4.   The Plaintiff United States of America was not scheduled as a creditor in the petition filed by the debtor corporation.  The contract between the plaintiff and debtor corporation was listed as an executory contract on the schedules annexed to the petition.

"5.   An amended plan of arrangement was confirmed following a hearing on March 21, 1947.

"6.   The debtor corporation deposited with the distributing agent the sum of $160,193.68 in order to consummate the plan of arrangement.  This sum was distributed pursuant to orders of the Court by checks signed by the distributing agent and countersigned by the referee.  No written provision was contained in the plan of arrangement for payment of plaintiff's claim.

"7.   Part of the statement made on the record on March 21, 1947, by

the Referee and the attorney for the debtor was as follows:

" 'THE REFEREE: Is there a claim of the Picatinny Arsenal?

" 'MR. FREEMAN: The Picatinny Arsenal may have some claim.

" 'THE REFEREE: Have we put up enough money to meet it?

" 'MR. FREEMAN: No.

" 'THE REFEREE: Is there a problem there?

" 'MR. FREEMAN: We do not owe them any money, and we want to bring them in. I want to state to your Honor further that the debtor company will deposit any sum of money that is represented by any claim that the Picatinny Arsenal may file in these proceedings within a time that your Honor directs them to file it.

" 'THE REFEREE: Have you any notion of what they might claim?

" 'MR. FREEMAN: We think they may claim $20,000.

" 'THE REFEREE: Have you $20,000 available?

" 'MR. FREEMAN: We have $94,000 available to pay them if necessary, and we represent to your Honor that there will be at all times $20,000 or more available to dispose of that claim, in cash * * *

* * * * * *

" 'MR. FREEMAN: I have a further application to limit the time of the United States of America to file a claim in this proceeding. And I am now handing your Honor a petition and order to show cause.

" 'THE REFEREE: There is a provision in the statute—

" 'MR. FREEMAN: Yes, there is.

" 'THE REFEREE: I want to see it.

" 'MR. FREEMAN: It is Section 369.

" 'THE REFEREE: Section 369 says under proved debts:

" ' "1. Have been proved but not allowed or disallowed, prior to the date of confirmation; or 'unliquidated debts.'

" ' "2. Are disputed or unliquidated, have been scheduled by the debtor, and are proved within such time as the Court may direct; or 'Arising from rejection of executory contracts.'

" ' "3. Arise from the rejection of executory contracts by the debtor and are proved within such time as the Court may direct." '

" 'This comes within the last category.

" 'MR. FREEMAN: Yes, that is the last category.

" 'THE REFEREE: Well, I will sign this order and let Miss Robinson fix the date. * * * ' "

"The records of the Clerk of the Bankruptcy Court reflect the appearance of 'G. Stewart King', distributing agent and president of the debtor corporation, in court on that date.

"8. On April 14, 1947, an order was entered directing the United States of America to file its claim on or before May 9, 1947.

"9. On May 9, 1947, the United States of America filed its preliminary contingent proof of claim in the amount of $26,818.82. The aforesaid claim alleged that the United States of America was a priority creditor.

"10. On May 9, 1947, the distributing agent had in his hands the sum of $6,085.01, which was subsequently distributed as follows:

| | |
|---|---|
| United States of America | $3,620.39 |
| Creditors having a priority to United States of America | 1,057.55 |
| Creditors not having a priority | 1,407.07 |
| | $6,085.01 |

"11. Each check was issued pursuant to an order of the Court and countersigned by the Referee in Bankruptcy.

"12. On March 30, 1949, the plaintiff amended its claim to $34,125.03, the final amount of the claim as allowed.

"13. On December 8, 1953, Referee Cahill determined that the claim of the United States was filed in time and that the amended plan of the bankrupt corporation had been confirmed upon the condition that adequate provision had been made for payment of the Government's claim in the event it was determined to be allowable in an amount not in excess of $94,000.

"14. On April 2, 1954, Referee Cahill's determination was reversed by the United States District Court for the District of New Jersey by Order of the Honorable Alfred E. Modarelli, United States District Court Judge.

"15. An appeal was taken from the District Court's ruling, and on January 1, 1955, the Court of Appeals for the Third Circuit reversed and held, 'The disclosure by the debtor at the referee's hearing on confirmation of the plan that the Government had become a creditor was therefore in performance of its duty under the Act and amounted to an informal amendment of the list of creditors included in the debtor's schedules.' Rehearing was denied on February 9, 1955. Certiorari was denied on October 1, 1955, by the United States Supreme Court.

"16. On May 3, 1956, the distributing agent filed his final report and account with the clerk of the bankruptcy court.

"17. On August 2, 1956, the final report and account was allowed, the distributing agent was discharged and the surety bond was discharged.

"18. The Defendant National Surety Corporation received its first notice of any claim under its bond by letter dated May 7, 1958, from the plaintiff demanding payment of the sum of $4,000, being the reduced amount of its bond.

"In addition to the foregoing it is stipulated that any party may offer all or any part of any pleading or other record on file in the matter of Seeley Tube and Box Company, Inc., Debtor, subject to objections as to materiality and relevancy.

"It is further stipulated that the foregoing stipulation shall be filed with the court by the attorney for Defendant National Surety Corporation within one week of the date that copies of the foregoing stipulation are mailed to the attorneys for the respective parties, and that in the event any attorney for any party has objection to any provision of the foregoing stipulation such objection shall be made known prior to the filing of the within stipulation with the court, and that the stipulation shall be filed without the necessity of execution by the attorneys."

(Certified a true copy by Ashley B. Carrick, C.S.R.)

(Filed June 19, 1961.)

I find the facts as stipulated. In sum, King, a distributing agent, appointed by a Referee in Bankruptcy pursuant to 11 U.S.C.A. § 737(1), to receive and distribute, "subject to the control of the court" a fund of $160,193.68 deposited by Seeley Tube and Box Company, Inc., Debtor, under Chapter XI of the Bankruptcy Act, did, between March 21, 1947 and March 7, 1956, pay and distribute to other creditors of Debtor all but $3,620.39 of the moneys in his hands, before paying a debt of $34,125.03 due to the United States from the Debtor. National Surety Corporation, as surety, with King as principal, gave bond in the penal sum of $10,000, pursuant to the Referee's order of March 17, 1947, conditioned for the performance by King of his duties as Distributing Agent for Seeley Tube and Box Company, Inc., Debtor, under

Chapter XI of the Bankruptcy Act. After allowance of a credit to the Debtor in the sum of $1,486.33 and deduction of a receipt from the Debtor of $6,807.62, there remained due to the United States, as a priority creditor, on the date of the commencement of this action (July 3, 1958) the sum of $25,831.08. However, all of the moneys which were deposited with the Distributing Agent, except $6,-085.01, had been paid out by him, in compliance with the Referee's orders, *before May 9, 1947*, the date on which the Government's preliminary, contingent proof of claim for $26,818.82 was filed, which was not amended to the amount of $34,125.03 until March 30, 1949. The plan of arrangement contained no written provision for payment of plaintiff's claim out of the sum deposited with the Distributing Agent.

## DISCUSSION

On March 21, 1947, during the course of a hearing before the Referee in Bankruptcy, upon the application of the Debtor for confirmation of an amended plan of arrangement, and in the presence of George Stewart King, the Referee inquired respecting a contingent claim of the Government in connection with a contract or contracts between the Debtor and Picatinny Arsenal, an agency of the Government. This contingent claim had not originally been listed in the Debtor's bankruptcy schedules. The attorney for the Debtor admitted that the Government might have some claim, and in response to the Referee's further inquiry, estimated that the claim might amount to $20,000, and added: "We have $94,-000 available to pay them if necessary, and we represent to your Honor that there will be at all times $20,000 or more available to dispose of that claim in cash." At the time the foregoing representation was made, King had already been appointed Distributing Agent of the Debtor by the order of the Referee dated March 17, 1947, which directed the giving of the bond hereinbefore referred to.

Annexed to the complaint in this case as an exhibit is a document purporting to be an unexecuted copy of the final petition and report of the Distributing Agent to the Referee in Bankruptcy, setting forth that on March 17, 1947 the Agent deposited in his official account the sum of $160,193.68, and listing a succession of 92 checks of various dates between March 21, 1947 and March 7, 1956, in varying amounts, to various payees, aggregating the amount of the bank deposit. Included in these disbursements was that of March 7, 1956 to the United States of America, purporting to be "on account" of the Government's claim, and represented to be the balance in the hands of the Agent. Leave was granted to the Government to file its claim on or before May 9, 1947 by the Referee's order of April 14, 1947. The Government's claim was filed within the time limited.

On February 17, 1950, during the course of the performance of his duties as Distributing Agent, King petitioned the Bankruptcy Court to reexamine the Government's claim and contended that it was not filed within time. By his Order of December 8, 1953, the Referee determined that the Government's claim had been timely filed, in the amount of $34,125.03. Although the District Court reversed the Referee's determination in this regard, In re Seeley Tube & Box Co., 1954, 120 F.Supp. 269, the Third Circuit Court of Appeals reversed the District Court and denied a rehearing thereon, 219 F.2d 389. Certiorari was denied by the Supreme Court of the United States, Seeley Tube & Box Co. v. United States, 350 U.S. 821, 76 S.Ct. 46, 100 L.Ed. 734.

By his order of August 2, 1956, the Referee discharged King as Distributing Agent and cancelled his bond without notice to the plaintiff.

In the light of the facts set forth in the Stipulation and disclosed by the record in the bankruptcy proceedings involving Seeley Tube and Box Company, the Government's reliance in this action upon the provisions of 31 U.S.C.A. § 192

is misplaced. At the outset, the question is posed whether King, by virtue of his appointment by the Referee in Bankruptcy as Distributing Agent in the Chapter XI proceedings, thereby became included in the category of those whose liability is created by the language of the statutory section relied upon. In other words, we are here called upon to determine whether King was an "executor, administrator or assignee or other person" who paid "any debt due by the person or estate for whom or for which he acts" before satisfying the debts due to the United States from such person or estate. An analogous question was before the Court in United States v. Stephens, 5 Cir., 1953, 208 F.2d 105, 41 A.L.R.2d 441. In that case the statute here relied upon was sought to be applied to the Receiver of an insolvent in a state court proceeding, and the Court of Appeals affirmed the District Court in dismissing the action upon the ground that the Receiver was not within the category to which liability under the statute would extend. The Stephens case, in construing and interpreting the statute, adhered to the principal that an action based entirely upon the statute "must find its warrant in the statute" precluding a Court "upon the pretense of construing it" from enlarging "its coverage to bring within it those not expressly or by clear intendment embraced within its terms." (p. 107) By applying that test the Court necessarily reached the conclusion not only that a Receiver was *not* among the persons expressly mentioned by the statute, but that the Receiver's custody of property in the insolvency proceeding was "that of the law or of the court" and that the actions of the Receiver in taking and retaining custody were those of an agent of the court. Since, therefore, the Receiver was a ministerial officer acting as an arm of the Court, he derives his authority from the Court and is subject only to its order. In rejecting the contention that the Receiver there involved was within the phrase "or other person" employed in the statute, the Court, in Stephens, limited the category described by that phrase "to those who stand as personal representatives not only by the application of the principle of *ejusdem generis* but by the language qualifying 'person' as one 'who pays in whole or in part any debt due *by the person or estate for whom or for which, he acts'*." (p. 108) The dismissal of the action in the Stephens case was affirmed because of the *failure* of the Government to show "that the defendant is either an executor, administrator, or assignee of the debtor; or, if not, that he stands to the debtor as agent or in some other representative capacity and, as such agent or representative, has paid the debt due the United States; and that thus, as such agent or representative, he has defeated the priority accorded to debts of the United States." (p. 109)

A later case based upon section 192 and involving a Receiver, United States v. Crocker, D.C.Nev.1961, 194 F.Supp. 860, cited and followed the Stephens case, supra.

In re J. B. Pollak Co., 2 Cir. 1936, 86 F.2d 99, relied upon by the Government, is distinguishable from Stephens, supra, and from the case at bar, because the distributing agent in Pollack made the payments which depleted the fund without a proper Court order.

In re Empire Shoe Corp., D.C.N.Y. 1936, 16 F.Supp. 713, denied a creditor's claim against a distributing agent where the agent had relied on the Court's order in making his distribution and had not acted in bad faith.

In the case at bar, King was not an executor, administrator or assignee, or other person, who acted for the Debtor by paying Debtor's general creditors before paying the debt owned by the Debtor to the United States. An examination of the Referee's order of March 17, 1947 reveals that it directed the Debtor to deposit with King, as Distributing Agent, on or before March 19, 1947, the consideration to be distributed to creditors, the money necessary to pay all debts which had priority, and to pay the costs and expenses of the proceedings as the

Court might determine. The same order directed King, as Distributing Agent, on receipt of such moneys, to deposit them in an account to be opened by him in any qualified bankruptcy depository in the District, *subject to the control and orders of the Bankruptcy Court*. The Plan of Arrangement came on for hearing and confirmation on March 21, 1947, and on that day King, as Distributing Agent, was directed to distribute the moneys which had been deposited with him "by checks to be drawn and signed by the said distributing agent and countersigned by this Court in accordance with the terms of the orders of distribution to be hereafter made and entered by the Court * * *." Further, on the same date, the Referee signed orders and arrangement sheets upon the authority of which King prepared, signed and sent to the Referee for countersignature, checks in the indicated amounts, to the named payees totalling $149,422.20. On the basis of further arrangement sheets, signed by the Referee on March 28, 1947, additional checks were signed by King and sent to the Referee for countersignature in a total amount of $4,995.40.

It was not until May 9, 1947 that the Government filed its liquidated claim for $26,818.82, which was amended on March 30, *1949* to $34,125.03, and ultimately allowed as amended. When the Government's claim was initially filed in a liquidated amount there remained in the hands of the Distributing Agent only $6,085.01. The remainder of the moneys which had been deposited with him had theretofore been disbursed by him by checks signed by him and countersigned by the Referee, all upon specific orders of the Referee.

Of this balance of $6,085.01, $3,620.39 was subsequently paid on account of the claim of the United States, and $1,057.55 was paid to claimants having statutory priority to the claim of the United States. On May 3, 1956, after the Distributing Agent had paid out all of the moneys in his possession, he filed his final report, and obtained an approval of his account and discharge from his office, together with the cancellation of his bond.

I do not reach the contention of the defendants that the Government is precluded from recovering in this action by reason of having *waived* its right to priority in the funds in the hands of King through failure to assert its right while the funds remained in the Distributing Agent's possession.

Liability of the defendant surety is dependent upon the liability of its principal. Since I have concluded that King was not liable under Section 192, no liability can be imposed upon the surety upon his bond.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. § 1345.

2. This Court has jurisdiction of the parties to this action.

3. The evidence fails to support the cause of action alleged in the complaint, which should be, and accordingly is, dismissed.

Submit an appropriate order.