The decision of the district court is therefore AFFIRMED.

**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**James W. WHITNEY, and Insurance
Company of North America,
Defendant-Appellant.**

**No. 78–2919.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1981.

Decided Aug. 27, 1981.

**608**

Gary W. Faulkes, Van Nuys, Cal., for defendant-appellant.

Joan I. Oppenheimer, Dept. of Justice, Washington, D.C., argued, for plaintiff-appellee; M. Carr Ferguson, Washington, D.C., on brief.

Before DUNIWAY and REINHARDT, Circuit Judges, and MARQUEZ,* District Judge.

MARQUEZ, District Judge:

This appeal involves the personal liability of James W. Whitney for unpaid federal employment taxes owed by Van Nuys Convalescent Hospital, Inc. Jurisdiction is conferred on this court by 28 U.S.C. § 1291. The District Court found that Whitney had violated 31 U.S.C. § 191 by preferring claims of other creditors of the taxpayer, in derogation of the Government's claim for back taxes, with knowledge of the claims of the Government at a time when the taxpayer was insolvent. Whitney was, thus, found personally liable under 31 U.S.C. § 192 for the unpaid FICA and FUTA taxes owed by Van Nuys Convalescent Hospital, Inc. Judgment was entered in favor of the United States in the sum of $12,069.07, plus interest and cost. The judgment of the District Court is affirmed for the following reasons.

The District Court found that in December 1973, Van Nuys Convalescent Hospital Corp. [taxpayer] sold its ownership interest in certain real property in Van Nuys, California, to Van Nuys Convalescent Investors, a limited partnership. At the same time, the taxpayer leased back the premises on which the Van Nuys Convalescent Hospital was located from Van Nuys Convalescent Investors. From December 1973 through 1974, the taxpayer operated the hospital facility. James Whitney, who is both knowledgeable and experienced as a hospital administrator, had been employed as the administrator of the hospital since February 1974. As a result of the taxpayer's failure to pay the required monthly rental payments, Van Nuys Convalescent Investors moved for and obtained a state court order appointing Whitney as receiver of the real property. Whitney continued to manage and act as administrator of the hospital facility throughout these proceedings and until June 2, 1975. During the course of his receivership, Whitney held himself out to Internal Revenue Service, Medicare, Blue Cross/Blue Shield and to other creditors of the taxpayer as both the receiver and administrator of the hospital facility. He did the purchasing, the hiring and firing of

---

* Honorable Alfredo C. Marquez, United States District Judge, District of Arizona, sitting by designation.

employees for the taxpayer, and received and negotiated medical payments from Medicare and Blue Cross/Blue Shield made payable to the taxpayer in excess of $26,000.

In December 1974, however, the hospital lost its license to do business, the patients were removed and the taxpayer ceased to do business. The taxpayer had previously incurred liability for both federal employment and unemployment taxes for which the United States made claim upon the taxpayer. An Internal Revenue Service officer notified Whitney, on several occasions during the last month of 1974 and the first week of 1975, of this liability and explained the provisions of 31 U.S.C. §§ 191 and 192 to him. Thus, Whitney was aware of the claim of the United States and its priority prior to paying other obligations incurred by the taxpayer. Importantly, the District Court specifically found that the taxpayer was insolvent in January 1975.

On January 13, 1975, Whitney made a payment of $13,411.08 to the Division of Industrial Welfare of the State of California for unpaid payroll taxes. At the same time, Whitney also paid part of the taxpayer's federal tax liabilities, however employment taxes for the fourth quarter of 1974, totalling $8,315.29, remained unpaid. The taxpayer also owed FUTA taxes for 1974, bringing the total owed to $12,069.07. Although Whitney may not have known the exact amounts due and owing for such taxes at the time he paid other creditors, he had possession of all of the payroll records of the taxpayer and was in the process of computing such amounts.

Two days later, Whitney informed the IRS officer that he would be unable to pay these remaining tax liabilities since he had only $7,000 left in the bank account after the payments made on January 13th, and yet, between January 15 and March 25, 1975, Whitney issued seventeen checks totalling $7,968.00 to payees other than the IRS. At the time that Whitney was paying off these other creditors, the taxpayer had no source of income since the patients had been removed from the hospital and its license to do business was revoked. The taxpayer's only assets were checks to be received from Blue Cross/Blue Shield for previous medical services rendered. Whitney admitted that he had complete knowledge of the taxpayer's debt to the Government at the time such checks from Blue Cross/Blue Shield were negotiated and non-IRS creditors paid.

Title 31, U.S.C. § 191[1] stated, in pertinent part:

> Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a . debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.

In *Bramwell v. United States Fidelity & Guaranty Co.*, 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1926), the Supreme Court held that § 191 was to be liberally construed so as to effect the public purpose of securing debts owed to the United States. In that case the Court quoted Mr. Justice McKinley, who in speaking for the Court in *Beaston v. Farmers' Bank*, 37 U.S. (12 Pet.) 102, 134, 9 L.Ed. 1017 (1838), said:

> * * * And it is manifest, that congress intended to give priority of payment to the United States over all other creditors, in the cases stated therein. It, therefore, lies upon those who claim exemption from the operation of the statute, to show that they are not within its provisions.

*Bramwell, supra* 269 U.S. at 487, 46 S.Ct. at 177.

The right of the United States to assert the priority established by this section "is limited to the particular state of things specified", *United States v. State of Oklahoma*, 261 U.S. 253, 259, 43 S.Ct. 295, 297, 67 L.Ed. 638 (1923), in the statute

---

1. Revised Statutes § 3466; later amended in 1978.

itself. That is, § 191 applies to all debts due the United States "when their insolvency is shown in any of the ways stated in § 3466". *Bramwell, supra* 269 U.S. at 488, 46 S.Ct. at 177. As the Supreme Court explained in *United States v. State of Oklahoma, supra* 261 U.S. at 259–60, 43 S.Ct. 297–98,

> * * * The meaning of the word "insolvent" used in the act and of the insolvency therein referred to is limited by the language to cases where "a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment", etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part. [Citations omitted]

Thus, the reference in § 191 to an "an act of bankruptcy" is general and for the sole purpose of describing one of the three ways in which a debtor's insolvency may be manifested. *Bramwell, supra* 269 U.S. at 490, 46 S.Ct. at 178.

■ The "act of bankruptcy" which triggers the application of § 191 in this case is the making of a preferential transfer. *Lakeshore Apartments, Inc. v. United States*, 351 F.2d 349, 353 (9th Cir. 1965); *In re Gottheiner*, 3 B.R. 404, 408 (Brktcy.N.D. Ca.1980). Section 191 establishes a priority in favor of the United States for *any* debt owed to it by an insolvent debtor, *King v. United States*, 379 U.S. 329, 334, 85 S.Ct. 427, 430, 13 L.Ed.2d 315 (1964), and, as this court has previously held, the fact that a formal filing in bankruptcy did not occur does not deprive the payments of their preferential character for the purposes of § 191. *Lakeshore Apartments, Inc. v. United States, supra.*

■ Here, payments were made to creditors other than the United States in derogation of its claim for federal employment

taxes owned to the government. At the time, the taxpayer was insolvent. The court's finding of insolvency is not clearly erroneous. The taxpayer made payments to the Division of Industrial Welfare for unpaid payroll taxes in the amount of $13,-411.08 and issued seventeen other checks, totalling $7,968.00 to payees other than the United States. Since the priority established in favor of the United States by § 191 is absolute, any payments made to creditors other than the United States act to negate the § 191 priority. Taxpayer's payments to the Division Industrial Welfare and others, thus, constituted an "act of bankruptcy", one of the three ways insolvency may be manifested according to § 191.

■ However, Whitney argues that, even if § 191 is found to be applicable in this case, he should not be held personally liable under § 192 because he is not an "executor, administrator, or assignee" within the meaning of the statute and that the District Court erred in finding him liable on the basis that he held the title of receiver of the real property upon which the hospital was situated. But Whitney misstates the issue—Whitney was liable, not because he was a court-appointed receiver of the real property, but because he exercised control over the order in which the taxpayer's debts were paid, bringing him within the scope of § 192 as an "other person". The District Court's reliance upon *King v. United States, supra* and *United States v. Crocker*, 313 F.2d 946 (9th Cir. 1963), for this conclusion of law indicates that this was the District Court's reasoning and implicit finding.

Sections 191 and 192 are to be construed together. *Bramwell, supra* 269 U.S. at 490, 46 S.Ct. at 178; *United States v. Butterworth-Judson Corp.*, 269 U.S. 504, 513, 46 S.Ct. 179, 180, 70 L.Ed. 380 (1926); *Lakeshore Apartments, Inc. v. United States, supra* at 352. Section 192[2] states:

---

**2.** Revised Statutes § 3467; May 10, 1934, c. 277, § 518(a), 48 Stat. 760; later amended in 1978.

Every executor, administrator, or assign-ee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

The *Bramwell* court explained the interrelationship between §§ 191 and 192 as follows:

The specification in § 3466 of the ways insolvency may be manifested is aided by the designation in § 3467 of the persons made answerable for failure to pay the United States first from the inadequate estates of deceased debtors or from the insolvent estates of living debtors. The persons held are "every executor, administrator, or assignee, or *other person*." The generality of the language is significant. Taken together, these sections mean that a debt due the United States is required first to be satisfied when the possession and control of the estate of the insolvent is given to any person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear. [Citations omitted]

*Bramwell, supra* 269 U.S. at 490, 46 S.Ct. at 178.

The Ninth Circuit followed this interpretation of §§ 191 and 192 in *United States v. Crocker, supra.* In that case, this court held that a court-appointed receiver could be held liable under § 192 notwithstanding the fact that such persons are not expressly named in the statute. It was enough that the court-appointed receiver, who had taken possession and control of the assets of an insolvent debtor having outstanding obligations due the United States under § 191, knowingly distributed the assets in derogation of that priority. That holding reaffirmed the *Bramwell* language, quoted above, that any person with the authority to pay outstanding debts of an insolvent who makes payments in derogation of the

United States priority will be liable under § 192. This court found that, in determining liability under § 192, the significant characteristic was whether a person is "given possession and control of assets of debtors and [is] charged with the payment of debtors' obligations. Under the rationale of *Bramwell*, any 'other person' who answers this description is included in Section 192, if the debtor is insolvent." *Id.* at 949.

One year later, in *King v. United States, supra* 379 U.S. at 337, 85 S.Ct. at 431, the Supreme Court, in holding a distributing agent for a debtor in a Chapter XI proceeding liable under § 192, again emphasized that it was the degree of control over a debtor's assets, rather than the form of title held by the agent, which was of paramount importance in determining who could be held liable under § 192. The court held therein that

* * * The purpose of § 192, as recognized in *Bramwell*, is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid. *Whether or not King falls within the category of fiduciaries on whom such responsibility should be placed depends,* not on the title of his position or the mode of his appointment, but, in practical terms, *upon the degree of control he is in a position to assert over the allocation among creditors of the debtors' assets in his possession.* [Emphasis added]

The distributing agent was, thus, held personally liable, pursuant to § 192, even though he contended that he was merely paying off debts to creditors other than the United States in conformity with court orders and that he exercised no discretion in the determination of which debts to pay first. The Court held that King, who took an active role in the formulation of the Chapter XI plan at a time that he was aware of the claim of the United States, had a duty to see that the court was, at least, aware of this priority claim. Although King had not acted dishonestly in any way nor had attempted to "thwart the Government's claim", *Id.* at 339, 85 S.Ct. at

432, he did have an obligation to the court to inform it of the Government's priority claim.

In *Lakeshore Apartments, Inc. v. United States, supra,* decided one year after *King v. United States, supra,* the Ninth Circuit held that stockholder-managers, although not executors, administrators, or assignees, would still be held liable as "other person[s]" under § 192, because they were in complete control of a corporate debtor's assets, were fully aware of its outstanding debt to the United States, and paid other creditors in derogation of the Government's established priority. This court again emphasized that it was the degree of control and possession of the debtor's assets which was decisive.

■ The present case presents an equally strong argument for imposing liability upon Whitney pursuant to § 192. Whitney, who holds himself out as both knowledgeable and experienced as a hospital administrator, had been employed by the hospital as its administrator from February 1974. He continued in this position through June 1975. Whitney was also appointed receiver of the real property, upon which the hospital was situated, upon the motion of Van Nuys Convalescent Investors. It is clear that Whitney held himself out to the Internal Revenue Service, Medicare, Blue Cross/Blue Shield and others as both receiver and administrator of the entire hospital operation. He had complete control of the taxpayer's assets and received and negotiated medical payments from Medicare and Blue Cross/Blue Shield at a time when he had complete knowledge of the existing debt to the United States. Yet, while on notice that the United States had priority for payment of the debt owed to it, Whitney issued checks on behalf of the taxpayer payable to the Division of Industrial Welfare and others.

Accordingly, we hold that the degree of control and possession which Whitney exercised over the taxpayer's assets and the authority with which he disbursed the taxpayer's funds in payment of the taxpayer's debts warrant the imposition of personal liability upon him pursuant to § 192.

The judgment of the District Court is affirmed.