**In re Harry L. CHILDRESS, Bankrupt.**

**Joyce A. CHILDRESS, Plaintiff,**

**v.**

**AURORA NATIONAL BANK, Ralph Egeland, and Harry L. Childress, Defendants.**

**Bankruptcy No. 79 B 2606.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 17, 1986.

James Jensen, Law Offices of Edward F. Streit, P.C., Aurora, Ill., for defendants, Aurora Nat. Bank and Ralph Egeland.

Arthur Sternberg, Pedersen & Houpt, Chicago, Ill., for Joyce Childress.

### MEMORANDUM AND ORDER

ROBERT L. EISEN, Chief Judge.

This matter comes to be heard on the motion of Joyce A. Childress ("plaintiff")

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to the case herein by prior Bankruptcy Rule 756, on her adversary proceeding against Aurora National Bank (the "Bank") for damages based on an alleged breach of duty by the Bank while acting as disbursing agent in this Chapter XII case. For the reasons set forth below, plaintiff's motion for summary judgment is denied and the Bank's motion to dismiss the complaint is granted.

## BACKGROUND

The Chapter XII petition of the debtor, Harry L. Childress ("debtor"), was filed on March 20, 1979. Subsequent thereto, the debtor's Amended Plan of Arrangement (the "Plan") was filed on October 30, 1979. The Plan proposed to repay creditors 100% through the sale of two of the debtor's fractional interests in certain real property. Article II of the Plan, the catalyst for the instant complaint, provided, *inter alia:*

> Petitioner's plan contemplates, however, the sale of certain real estate interests which will result in Federal tax liability and the plan hereinafter set forth will include the retention of sufficient funds to satisfy these tax liabilities.

The sale of the first interest contemplated full payment of $325,000 to be received by June 30, 1980 and the Plan stated that the debtor would be required in connection therewith to pay a federal tax of approximately $90,000. With respect to the sale of the second interest for approximately $220,000, the Plan set forth that the debtor would be liable for approximately $62,000 in federal tax liability.

Article V of the Plan provided that the debtor would deposit the proceeds from the foregoing sales in a separate escrow account with the Bank to be disbursed by a disbursing agent pursuant to court order. That same article, in providing for the payment of claims, made no provision for the retention of funds in escrow for future tax liabilities generated by the sales, other than to state that Class 1 priority creditors would be paid in full after payment in full

to each of the two secured creditors. The Plan was thereafter confirmed on December 5, 1979.

On April 3, 1980, the Bank made disbursements pursuant to court order. Shortly thereafter, on April 17, 1980, a creditors' committee was established composed of defendant Ralph Egeland, president of the Bank, and two other individuals. On February 18, 1981, the creditors' committee filed its petition seeking authority for the disbursing agent to make a 100% disbursement to creditors, after payment of any fees and costs having priority under the plan, from the approximately $165,000 on hand. The court granted the creditors' committee's petition and further ordered that the sum of $5,000 be held until March 11, 1981 to cover contingencies, which sum, as well as all other funds currently held by the disbursing agent, would be released to the debtor if no further orders of court were entered before that date.

In April, 1981, the plaintiff alleges that she and the debtor filed a joint return showing tax liability of $140,000 from the 1980 sales of property to fund the Plan. Because there was no money to pay such tax liability, plaintiff states that the IRS subsequently levied on the residence which had been awarded to her in connection with the dissolution of her marriage to the debtor in 1982. Consequently, the plaintiff and the debtor jointly borrowed $96,681.41 from the Bank to pay the tax liability and in connection therewith, the plaintiff signed a one year promissory note dated May 28, 1982, securing said loan with an assignment of beneficial interest of the land trust holding her home. Both the debtor and the plaintiff defaulted on the note, thereby causing the Bank to institute a state court foreclosure proceeding against both parties. The Bank took a voluntary dismissal of that foreclosure proceeding subsequent to plaintiff's filing the instant adversary complaint which seeks to surcharge the Bank by rescinding the promissory note and assignment of beneficial interest and to recover actual and punitive damages and attorneys' fees. The plaintiff alleges that

the Bank, through its president, breached its fiduciary duty as a disbursing agent by failing to retain sufficient proceeds, at the time of the February, 1981 disbursements, to pay the subject federal tax liabilities.

## DISCUSSION

Initially, the court concludes that there does not appear from the pleadings, memoranda, and other materials submitted, any fact which raises a genuine dispute which is material or relevant to the court arriving at a judgment as a matter of law. Therefore, the issue as to whether the Bank breached a duty to the plaintiff herein can be rendered as a matter of law. Secondly, since this case was commenced under the Bankruptcy Act of 1878 (the "Act"), this adversary proceeding must be resolved under the Act.

■ The plaintiff's pending motion for summary judgment sets forth three independent sources for the Bank's duty to retain sale proceeds: the Plan itself; the predecessor to 31 U.S.C. § 3713 and the analysis thereof in *King v. United States*, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964); and section 64 of the Act. As will be discussed briefly below, the court concludes that these sources imposed no duty on the Bank to this plaintiff in the context of this case. Concomitantly, the court concludes that this adversary proceeding can be summarily disposed of simply on the basis of Rule 924 of the Act which makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy cases. Fed. R.Civ.P. 60(b) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the

judgment, order, or proceeding was entered or taken....

At the time the court entered the February, 1981 order of distribution, the plaintiff was still married to the debtor. Two months later, when plaintiff and the debtor filed their joint tax return, both of them were aware of the $140,000 tax liability. Therefore, if in fact the Plan was to provide for an escrow account for the tax liability so that the February, 1981 order had been entered by mistake or, as the plaintiff alleges in her present complaint, by some misconduct of the disbursing agent, it was incumbent on her part to present a motion to vacate the order of disbursement within a year after it was entered. Instead, she signed a promissory note in May, 1982 to pay the tax liability. It was not until four years after the 1981 disbursement that the plaintiff filed the instant complaint, essentially contending that the disbursement order should never have been entered. Her request for relief from that order is simply too late, even if all the allegations she sets forth are true. *See In re Daugherty*, 32 B.R. 461 (Bankr. E.D.Tenn.1983).

■ Even in the absence of the foregoing disposition of this complaint, upon reviewing section 64 a of the Act, the Plan itself, and the Supreme Court decision in *King v. United States, supra*, this court finds no duty on the part of the Bank as disbursing agent. Section 64 a(4) of the Bankruptcy Act provides for a fourth priority for "taxes which became legally due and owing by the debtor to the United States." The priority accorded thereunder relates to those taxes which became legally due and owing *prior* to bankruptcy. 3 Collier on Bankruptcy, ¶ 64.401 at 2150.1 (14th ed. 1975). A tax cannot be found "legally due and owing" by the debtor until enough is known of its basis to make the tax computable or knowable, when all facts necessary for its calculation are available. *In re Pulliam*, 2 B.C.D. 800, 802 (Bankr.E. D.Mo.1976). Clearly, the tax at issue here was not legally due and owing at the time this Chapter XII petition was filed. There-

fore, any priority which may have existed would arise pursuant to section 64 a(1) as an administrative expense.

However, the liability for the taxes, which accrued post-confirmation, was not incident to the arrangement in this case as a cost of administration provided for in the Plan as a Class 1 administrative expense priority. Rather, the liability for taxes arose, if at all, under the language in the Plan which, under section 461, may, but is not required to, "provide for payment of debts incurred after the filing of the petition and during the pendency of the arrangement, in priority over the debts affected by such arrangement." Although the Plan apparently intended to provide for the tax liability accruing from the sale of the debtor's real property, it did not so explicitly provide. No provision for the estimated tax liabilities was set forth in the disbursement portion of the Plan.

The court further notes that even if the United States were a creditor provided for in this Chapter XII Plan, it was not entitled to participate in distribution thereunder since it was neither a creditor whose proof of claim had been filed prior to the date fixed by the court pursuant to Rule 12–30(b)(3) and subsequently allowed, nor a creditor whose claim, although not so filed, was *scheduled* by the debtor *and* was not contingent, unliquidated, or disputed. 9 Collier on Bankruptcy ¶ 9.10 at 1150 (14th ed. 1976).[1] (emphasis added). Thus, if the United States was not even entitled to participate in the distribution, the disbursing agent could not have breached any duty under the Act or the Plan.[2]

The plaintiff, in contending that the disbursing agent improperly paid unsecured debt ahead of the Class 1 administrative expense of post-petition taxes, places primary reliance on the Supreme Court decision in *King v. United States*, 379 U.S. 329, 85 S.Ct. 427, 13 L.Ed.2d 315 (1964). The Supreme Court there held a disbursing agent in a Chapter XI proceeding personally liable for satisfying claims of non-priority creditors while having knowledge of an outstanding government priority claim. The duty in that case was based on 31 U.S.C. § 192 (now 31 U.S.C. § 3713) which provided:

> Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.

However, no liability can be attributed to the disbursing agent herein pursuant to the above statute since, as noted above, there was no debt due to the United States in the form of a priority claim at the time of the February, 1981 order of disbursement.

The duty imposed on the disbursing agent in *King* was greatly limited by the circumstances of that case. The plaintiff herein seeks to expand the Supreme Court's holding in *King* to impose a duty on the disbursing agent to have informed this court that the creditors' committee's petition apparently conflicted with the provisions of the Plan, a duty which this court concludes was more properly on the debtor

---

1. The plaintiff argues that the tax "claim" was contingent and unliquidated. However, the United States would still be required to file a proof of claim within the time fixed under Rule 12–30. Such claim would thereafter have to be allowed in order to participate in distribution.

2. The court notes that the Plaintiff seems to find some misconduct due to the fact that the Bank, besides acting as disbursing agent, was paid in full. However, even if there had been a legally due and owing tax claim, it would have been paid *after* payment to secured creditors pursu-

ant to Article V of the Plan. Even if the Bank had a duty to tell the court that the Plan conflicted with the February, 1981 petition for disbursement, it did not benefit from such alleged omission since it still would have received full repayment under the Plan. Further, if there were some conflict of interest with respect to the Bank's acting as disbursing agent while being the largest secured creditor, some objection should have been filed at the time of appointment, not four years later.

or his attorney.[3] As the concurring opinion notes in *King*, a disbursing agent's control and possession are limited to the deposit. The deposit made by the debtor is merely required to include a sufficient sum to pay all *scheduled* priority claims. If the deposit does not include an amount sufficient to take care of all scheduled priority claims, the arrangement may not be confirmed. 8 Collier on Bankruptcy ¶ 5.32[8] at 663 (14th ed. 1974). If an arrangement is nevertheless confirmed without a sufficient deposit to pay all scheduled priority claims, the disbursing agent should arguably not be required to bear the burden of the court's unauthorized act absent facts such as in *King*. *See King v. United States, supra*, 85 S.Ct. at 434.

Under the Bankruptcy Act, a disbursing agent is charged with distribution to *specified* recipients and has no reason or duty to know of or ascertain unscheduled debts. The disbursing agent performs only the ministerial function of paying out the deposited funds in conformity with orders of court. 8 Collier on Bankruptcy ¶ 5.27[7] at 640 (14th ed. 1974). Thus, lacking knowledge from some other source, the disbursing agent would be beyond the reach of 31 U.S.C. § 192 if the government "priority claim" is unscheduled and unpaid. *King v. United States, supra*, at 433. The present case is simply not one of a disbursing agent's payment out the deposit so as to defeat a scheduled government priority claim.

Finally, the court finds it significant that the United States never objected to the confirmation of the plan hereunder nor has it ever sought to assert its rights as a creditor by filing a claim for taxes against the estate under Rule 12–33 which permits the United States to file a claim for taxes after confirmation but before the case is closed, provided the taxes are found to be owing within one year from the date of filing and have not been assessed prior to confirmation, or which may become owing

from a trustee or debtor in possession. Nor is the plaintiff herein a creditor of this estate asserting a claim to the underlying deposit of funds. Rather, the plaintiff seeks to assert a claim for damages for an alleged breach of duty by the disbursing agent based on what she perceives to have been owed to the United States. If the disbursing agent did in fact owe anyone a duty under this Plan, it would be one to the United States and not to this plaintiff.

IT IS THEREFORE ORDERED that the motion of the plaintiff, Joyce A. Childress, for summary judgment is hereby denied. It is further ordered that the motion of Aurora National Bank to dismiss this adversary proceeding is hereby granted.

---

**3.** Section 473(2) of the Act requires that upon confirmation of a Plan, the debtor shall comply with the provisions of the arrangement and shall take all necessary action to carry out the same. By the time of the February, 1981 order, the debtor had all the necessary facts to ascertain any tax liability for which he may have been responsible.