NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2034
_____

UNITED STATES OF AMERICA

v.

DAVID A. TYLER, INDIVIDUALLY AND AS CO-EXECUTOR OF THE ESTATES
OF DAVID J. TYLER AND PAULA I. TYLER; LOUIS J. RUCH, INDIVIDUALLY
AND AS CO-EXECTOR OF THE ESTATES OF DAVID J. TYLER AND
PAULA I. TYLER,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cv-1239)
District Judge:  Hon. Michael M. Baylson
_____

Submitted Under Third Circuit LAR 34.1(a)
May 31, 2013

Before:   JORDAN and VANASKIE, *Circuit Judges*, and
RAKOFF*, *Senior District Judge.*

(Filed: June 11, 2013)
_____

_____
        * The Honorable Jed S. Rakoff, United States Senior District Judge for the United
States District Court for the Southern District of New York, sitting by designation.

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Appellants David A. Tyler and Louis J. Ruch appeal the summary judgment of the

United States District Court for the Eastern District of Pennsylvania holding them liable

for their failure to satisfy a federal tax lien on certain property of an estate for which they

were co-executors. For the reasons that follow, we will affirm.

## I.    Background

### A.    *Facts*

In January 2002, the Internal Revenue Service (the "IRS") notified David J. Tyler

("Mr. Tyler"), the father of Appellant Tyler, that he owed the IRS $436,849 in income

tax for the years 1992 through 1998. Mr. Tyler failed to pay the assessments. At the

time, Mr. Tyler and his wife, Paula I. Tyler ("Mrs. Tyler"), Appellant Tyler's mother,

owned real property in Delaware County, Pennsylvania (the "Property), as tenants by the

entireties. The Property was the only asset of which the IRS was aware that could have

been used to satisfy Mr. Tyler's unpaid tax liabilities.

Over a year later, in August 2003, the Tylers executed an indenture transferring

the Property, which at the time was listed on a "realty transfer tax statement of value"

document as having a fair market value of $326,128, to Mrs. Tyler for the "total

consideration" of $1. (App. at 141.) The indenture was recorded in September 2003 as a

"tax exempt transfer from husband and wife to wife." (App. at 139-40.)

In March 2004, the IRS filed a notice of federal tax lien on the Property. Mr. Tyler passed away in August 2006 without satisfying his tax liabilities. Having transferred the Property to his wife, Mr. Tyler died with no other distributable assets. Less than a year later, in June 2007, Mrs. Tyler passed away, leaving a will that named Appellants as co-executors of her estate and that further named Appellant Tyler as her sole heir.

The IRS sent letters to Appellants in September 2007, asserting that a federal tax lien securing Mr. Tyler's unpaid tax liabilities had attached to the Property before legal title had been transferred to Mrs. Tyler, and stating that Appellants, as co-executors of the estate, were obligated to satisfy the lien out of the assets of the estate. The IRS warned that it would, if necessary, take legal action to collect on the tax liabilities. Shortly thereafter, Ruch filed an administrative appeal with the IRS challenging the federal tax lien, but was unsuccessful in obtaining a release. Despite the lien, Appellants conveyed the Property to Appellant Tyler for $1 in November 2008. He then sold the Property for $524,000, netting $313.206.[1] He did not pay any of the proceeds to the government, but instead invested all of it in the stock market, except for $10,000 that he paid to Ruch. He claims now that the proceeds "pretty much got blown away in the market." (App. at 158.)

---

[1] That amount was listed on a settlement sheet at the time of the sale of the Property as the amount of cash proceeds that was paid directly to Appellant Tyler. The record does not indicate how that amount derived from the Property's sale price of $524,000.

B.    *Procedural History*

The government brought suit against Appellants in the United States District Court for the Eastern District of Pennsylvania, seeking to set aside what it deemed "fraudulent conveyances" of the Property and to satisfy its tax lien. (App. at 32-39.) In its complaint, the government alleged that both transfers of the property, first to Mrs. Tyler and then later to her son, were fraudulent, and that Appellants had breached their duty to pay the government its priority share of the proceeds from the ultimate sale of the Property by Appellant Tyler.

Appellants moved unsuccessfully to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. After discovery, they moved for summary judgment, raising three arguments. First, they said that the District Court lacked subject matter jurisdiction over the government's claims because the state probate court was already exercising jurisdiction over the estate. Second, they claimed that, even if the lien had attached to the Property, Mr. Tyler's "interest [in the Property] was extinguished" when he died, and Mrs. Tyler owned the Property free of the lien as a result of it having been held as a tenancy by the entireties. (App at 96.) Third, they argued that, as fiduciaries of Mrs. Tyler's estate, they could not be held to have a fiduciary responsibility for Mr. Tyler's estate, because they were never "appointed Executors of [his] Estate." (App. at 93). The government then cross-moved for summary judgment, arguing that Appellants were personally liable as fiduciaries

4

under the federal insolvency statute, 31 U.S.C. § 3713,[2] and that they were also liable under common law for conversion of property subject to a lien. The government sought one-half of the proceeds of the ultimate sale of the Property by Appellant Tyler, proportional to Mr. Tyler's share of the Property that was transferred to Mrs. Tyler at the time of the indenture.

The District Court denied Appellants' motion for summary judgment and granted the government's cross-motion. *United States v. Tyler*, No. 10-1239, 2012 WL 848239, at *1 (E.D. Pa. Mar. 13, 2012). The Court rejected Appellants' jurisdictional argument, explaining that "neither the Supreme Court nor the Third Circuit has ever determined that there exists any uncodified probate exception to a federal court's jurisdiction over an enforcement action under the Internal Revenue Code." *Id.* at *3. With respect to the merits of the case, the Court held that the August 2003 indenture severed the tenancy by the entireties, and that the lien continued to encumber one-half of the Property even after Mr. Tyler's death. *Id.* at *6-*9. The Court further held that, by disposing of the lien-encumbered Property without providing the government with a one-half share of the proceeds, Appellants violated the federal insolvency statute, 31 U.S.C. § 3713(b), for which they became personally "liable as fiduciaries of the estate." *Id.* at *10.

---

[2] Section 3713 provides that "[a] claim of the United States Government shall be paid first when … the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). The statute also provides that "[a] representative of … an estate … paying any part of a debt of the … estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." *Id.* § 3713(b).

5

The Court subsequently entered judgment against Appellants, holding them jointly and severally liable in the amount of $156,603 – one-half of the $313,206 net proceeds from the sale of the Property – together with interest accruing from the date of the sale of the Property by Appellant Tyler.  This appeal followed.

## II.     Discussion

### A.     *Subject Matter Jurisdiction*

Appellants first argue that the District Court lacked subject matter jurisdiction because, they insist, the so-called "probate exception" precludes a federal court from disposing of property that is in the custody of a state probate court.  "We exercise de novo review over questions of subject matter jurisdiction." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010).  "[T]he party asserting a federal court's jurisdiction bears the burden of proving that jurisdiction exists." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).  "However, a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" because it "has an independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged." *Id.* (internal quotation marks omitted).  We are satisfied that the District Court indeed had jurisdiction.

As an initial matter, federal district courts "have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1345.  In addition, district courts "shall have original jurisdiction of any civil action arising under

6

any Act of Congress providing for internal revenue … ." *Id.* § 1340.  Courts have, however, created an exception to federal subject matter jurisdiction in certain probate matters.  That "probate exception" is "narrow" and of "distinctly limited scope." *Marshall v. Marshall*, 547 U.S. 293, 305, 310 (2006).  Its purpose is to enforce the "general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*."  *Id.* at 311.  It thus "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate," and it "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."  *Id.* at 311-12.  Importantly, however, the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  *Id.* at 312.  Thus, "unless a federal court is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court, the probate exception does not apply."  *Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008).

The District Court did none of those things.  In fact, its judgment was not against any *res* held by the state probate court; it was a judgment *in personam* against Appellants for their failure to pay the government its share of the proceeds from the sale of the Property.  The District Court's judgment did not remove any property from the probate court's control, and its exercise of jurisdiction therefore did not qualify for the probate exception.  *See Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 50 (1909) (holding that, although federal courts may not interfere with property in the possession of

7

a probate court, they have "jurisdiction for the purpose of ascertaining the rights of the complainant to recover as against the executor, and the interest of the persons before the court").

Thus, the District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction to entertain this appeal under 28 U.S.C. § 1291.

B.    *Merits*[3]

Beyond their jurisdictional claim, Appellants reassert, with some variation, the substantive arguments raised in the District Court – that the federal tax lien was extinguished either at the time of the August 2003 indenture or as a result of Mr. Tyler's death, and that, as executors of Mrs. Tyler's estate, they could not be subjected to liability under the federal insolvency statute, 31 U.S.C. § 3713(b), for their failure to satisfy a lien that arose as a result of Mr. Tyler's tax delinquency. They also argue that the government did not satisfy its burden of proof as to the amount of the net proceeds from the ultimate sale of the Property by Appellant Tyler. We address those arguments in turn.

1.    *Extinguishment of the Federal Tax Lien on the Property*

The federal tax lien statute, which is contained in the Internal Revenue Code ("I.R.C."), provides that, "[i]f any person liable to pay any tax neglects or refuses to pay

---

[3] We "exercise plenary review over the District Court's grant of summary judgment." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 & n.17 (3d Cir. 2013). "Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (quoting Fed. R. Civ. P. 56(c) (1986) (amended 2007)). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

the same after demand, the amount," which includes "any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto …[,] shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." I.R.C. § 6321. The lien attaches "at the time the assessment is made," and remains until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322. Appellants concede that the IRS assessed Mr. Tyler in January 2002, and a federal tax lien therefore attached to the Property at that time.

As a general matter, "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere." *United States v. Avila*, 88 F.3d 229, 233 (3d Cir. 1996) (quoting *United States v. Bess*, 357 U.S. 51, 57 (1958)) (internal quotation marks omitted). That principle applies to a tenancy by the entireties as well. *See United States v. Craft*, 535 U.S. 274, 288 (2002) (holding that a "husband's interest in the entireties property constitute[s] 'property' or 'rights to property' for the purposes of the federal tax lien statute"). When a federal tax lien attaches to a property held in a tenancy by the entireties, it attaches to the delinquent taxpayer's one-half interest in the property. *See Popky v. United States*, 419 F.3d 242, 244-45 (3d Cir. 2005) ("Valuing the interests of tenants by the entireties equally accords with the longstanding Pennsylvania common law definition of tenancies by the entirety."). If the property is sold or transferred, the federal tax lien "will encumber a one-half interest in the hands of the transferee." IRS Notice 2003-60, 2003-2 C.B. 643, 2003 WL 22100950 (2003). If

9

duly notified of the lien before assuming control of the property, the transferee assumes the tax liability, to the extent of the value of the lien, of the transferor. *See Randall v. H. Nakashima & Co., Ltd.*, 542 F.2d 270, 275 (5th Cir. 1976) ("[A federal tax] lien applies to 'property owned by the delinquent at any time during the life of the lien,' and it cannot be displaced by subsequently acquired rights of third parties." (quoting *Glass City Bank v. United States*, 326 U.S. 265, 268 (1945)); *see also In re Defense Servs., Inc.*, 104 B.R. 481, 485 (Bankr. S.D. Fla. 1989) (noting that transferee "expressly assumed [transferor's] tax liability" because "assignment was made *after* the tax lien was perfected" and is therefore "subject to the tax lien").

There are two exceptions to that general rule that are relevant here. First, when a delinquent-taxpayer spouse dies, a federal tax lien on property held in a tenancy by the entireties by a husband and wife is extinguished, and "the surviving non-liable spouse takes the property unencumbered by the federal tax lien." IRS Notice 2003-60, 2003-2 C.B. 643, 2003 WL 22100950 (2003). Importantly, "[t]he rule that the federal tax lien does not survive the death of the taxpayer does not apply if the entireties estate previously has been terminated." *Id.* "For example, if the property has been conveyed to a third party, the federal tax lien will be deemed to encumber a one-half interest in the hands of the transferee and will not be affected by the subsequent death of either spouse." *Id.* The second exception is that a "lien imposed by [I.R.C. §] 6321 shall not be valid as against any purchaser … until notice thereof … has been filed … ." I.R.C. § 6323(a). The statute defines a "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in

10

property which is valid under local law against subsequent purchasers without actual notice." *Id.* § 6323(h)(6).

The District Court held that neither exception applies in this case. First, the Court held that "the indenture … leave[s] no question that the [Tylers] intended to sever the entireties estate" because it "explicitly transferred" the Property "from 'David J. Tyler and Paula I. Tyler, h/w,' as Grantors, to 'Paula I. Tyler,' as the lone Grantee," it specifies that it was "a 'tax exempt transfer from husband and wife to wife,'" and both Tylers signed it. *Tyler*, 2012 WL 848239, at *7. The District Court viewed that clear intention to sever the tenancy by the entireties as controlling because, as we have held, "intention is the cardinal and controlling element and if it is the intention of the parties to create an estate other than by entireties, such intention will be given effect." *High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991) (internal quotation marks omitted); *cf. Stop 35, Inc. v. Haines*, 543 A.2d 1133, 1135 (Pa. Super. Ct. 1988) ("[A] tenancy by the entireties may be severed by implied agreement of the parties.").

Appellants complain that the District Court reached its holding in the face of "conflicting material facts." (Appellants' Opening Br. at 23.) Those facts, as they describe them, are that "[t]he deed [of] execution was done for [the] convenience of the family business due to [Mr.] Tyler's health issues" (he had had a debilitating stroke), and that the Tylers "intended that the property still be held in the entireties." (*Id.* at 24.) They accordingly argue that the District Court "invaded the provi[nce] of the jury to decide whether the facts proved" an intention to sever the tenancy by the entireties. (*Id.*)

11

But the only evidence Appellants offered in the District Court to support their claim that the August 2003 indenture was not intended to sever the tenancy by the entireties was the testimony of Appellant Tyler that he was not aware that the property was put in his mother's name alone and that, after being shown the indenture, he believed that the transfer was for the sake of convenience. *Tyler*, 2012 WL 848239, at *7. As the District Court noted, "[n]ot only did [Appellant] Tyler lack knowledge of the conveyance until he was shown the indenture, his testimony is irrelevant in the absence of any contention that the conveyance was fraudulent, accidental or done by mistake." *Id.* Because Appellants have not cited any evidence to indicate that the August 2003 indenture was fraudulent, accidental, or mistaken, their bald assertion that there was no intention to sever the tenancy by the entireties is insufficient to establish a genuine dispute of material fact.[4] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." (quoting the then-operative iteration of Fed. R. Civ. P. 56(e) (internal quotation marks omitted)).

---

[4] The government initially sought in its complaint to set aside as fraudulent the conveyances of the Property to Mrs. Tyler in August 2003 and to Appellant Tyler in November 2008. *See Tyler*, 2012 WL 848239, at *2. In its cross-motion for summary judgment, however, the government did not press a claim of fraudulent conveyance, and on appeal no party argues that the conveyances should be set aside for fraud.

12

Appellants argued to the District Court that, even if the August 2003 indenture severed the tenancy by the entireties, Mrs. Tyler was a "purchaser" of the Property, and the federal tax lien could not attach, because the IRS had not yet filed notice of the lien at the time she purchased the Property. *See* I.R.C. § 6323(a) (providing that a "lien imposed by section 6321 shall not be valid as against any purchaser … until notice thereof … has been filed"). Even though Mrs. Tyler paid only $1 for the property, Appellants insisted that she qualified as a "purchaser" because she "became solely responsible for the mortgage, state and local taxes, and required renovations of the property," all of which constituted "adequate consideration." *Tyler*, 2012 WL 848239, at *8.

The District Court rejected Appellants' claim that Mrs. Tyler was a "purchaser" for purposes of I.R.C. § 6323. She had not paid "adequate and full consideration in money or money's worth" for her interest in the property. I.R.C. § 6323(h)(6). Nor had she assumed any significant obligations related to the property. As the Court saw it, Appellants simply "d[id] not point to anything in the record establishing the existence or extent of any obligations purportedly undertaken by Mrs. Tyler in exchange for the property." *Id.* On appeal, they again fail to note any record evidence establishing that Mrs. Tyler, in addition to paying $1, took on any obligations as consideration for the Property, let alone whether those purported obligations bore a reasonable relationship to the true value of the Property. Given that the fair market value of the Property was $326,128.50, the $1 consideration did not have a reasonable relationship to its true value, and the District Court correctly held that Mrs. Tyler was not a "purchaser" as that term is defined in § 6323.

13

We will therefore affirm the District Court's conclusion that the federal tax lien attached to the Property at the time Mr. Tyler was assessed in January 2002 and remained with the Property when it became part of Mrs. Tyler's estate.

2.    *Appellants' Liability as Fiduciaries of Mrs. Tyler's Estate*

The federal insolvency statute, 31 U.S.C. § 3713, "provides that when a person is insolvent or an estate has insufficient assets to pay all of its debts, priority must be given to debts due the United States." *United States v. Coppola*, 85 F.3d 1015, 1019 (2d Cir. 1996). In relevant part, it says that "[a] claim of the United States Government shall be paid first when … the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." 31 U.S.C. § 3713(a)(1)(B). It imposes liability on "representative[s] of … an estate" for "paying any part of a debt of the … estate before paying a claim of the Government." *Id.* § 3713(b). That liability shall be "to the extent of the payment for unpaid claims of the Government." *Id.* The purpose of imposing personal liability on estate representatives "is to make those into whose hands control and possession of the debtor's assets are placed, responsible for seeing that the Government's priority is paid." *King v. United States*, 379 U.S. 329, 337 (1964). Of course, "[i]n order for liability to attach, the executor must have knowledge of the debt owed by the estate to the United States or notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed before making the challenged distribution or payment." *Coppola*, 85 F.3d at 1020.

In recognition of the insolvency statute's "broad purpose of securing adequate revenue for the United States Treasury, courts have interpreted it liberally." *Id.* With

14

respect to "the type of payments or 'distributions' from the estate for which an executor may be held liable," "a fiduciary, *e.g.*, an executor, may be held liable under the federal insolvency statute for a distribution of funds from the estate that is not, strictly speaking, the payment of a debt." *Id.* (alteration and internal quotation marks omitted). He may, for example, be held liable for "stripp[ing]" an otherwise solvent estate "of all of its assets and render[ing] it insolvent" by "provid[ing] for the distribution of all of the estate assets" to the heirs of the estate. *Id.* (internal quotation marks omitted). Courts also interpret the term "representative" broadly. "[O]ne need not be a personal representative to come within the coverage of" § 3713(b); the "decisive" factor "is the element of control over the assets." *King*, 379 U.S. at 337. The phrase "claim of the Government" has likewise been construed broadly in light of the statute's purpose. "There is no question," for example, "that taxes owed to the United States fall within the scope of a 'claim of the Government' under the statute's broad terms." *Coppola*, 85 F.3d at 1020. The phrase thus encompasses a statutory tax lien against property in the hands of an estate's executor.

The government established the necessary elements of 31 U.S.C. § 3713(a) and (b) to hold Appellants liable as fiduciaries of Mrs. Tyler's estate. Appellants, as co-executors of Mrs. Tyler's estate, were placed on notice by the IRS of a federal tax lien that encumbered one-half of the Property. Ruch even challenged the lien without success in an administrative appeal with the IRS. The lien established a "claim of the Government" to one-half of the proceeds of any sale of the Property. And by conveying the Property to Appellant Tyler for a nominal amount, Appellants paid him (by

15

distributing the Property to him) before paying the government its proportional interest in the property. We accordingly see no error in the District Court's conclusion that Appellants are liable under § 3713.

Appellants insist, however, that, as co-executors of the estate of Mrs. Tyler, they cannot be held liable under the federal insolvency statute for selling the Property without providing one-half of the proceeds to the government to satisfy a lien brought about by Mr. Tyler's tax delinquency. In other words, they argue that "[t]he Government cannot maintain any claims against [them] regarding the estate of [Mr.] Tyler [because] they are not the Executors" of his estate. (Appellants' Opening Br. at 17.) Their argument is based on the assertion that "the Government has no claims against the estate of [Mrs.] Tyler" (Appellants' Opening Br. at 18), a premise that is, as already discussed, fundamentally flawed. *See supra* Part II.B.1. We accordingly reject the argument.[5]

### 3. *Government's Burden of Proof on Net Proceeds of Final Sale*

The District Court entered judgment against Appellants "jointly and severally, pursuant to 32 U.S.C. § 3713(b), in the amount of $156,603" – one-half of the $316,206

---

[5] Appellants raise one other argument for why they cannot be liable under the federal insolvency statute. Under Pennsylvania law, "[w]hen any property is of no value to the estate, the court may authorize the personal representative to renounce his right to administer it." 20 Pa. Cons. Stat. Ann. § 3312. Appellants insist that, under that statute, they "have the right to renounce administration of real estate when it is not needed for the administration of the Estate," without satisfying federal liens on the property. (Appellants' Opening Br. at 19.) Appellants do not satisfy the statute, and we accordingly reject their argument. First, contrary to their implicit assertion, the Property was of value to the estate, to the tune of hundreds of thousands of dollars. *See infra* Part II.B.3. In addition, Appellants did not seek, nor did they receive, authorization from the probate court to renounce their right to administer the Property. *Tyler*, 2012 WL 848239, at *1.

16

Appellant Tyler netted from the sale of the Property. (App. at 1.) Appellants argue that that amount grossly overstates Appellant Tyler's net proceeds. They contend that the government "presented no competent evidence to show that the [Property] was worth $313,206.98." (Appellants Opening Br. at 28.) That sum, according to Appellants, is not an accurate valuation, because it fails to "take into account the mortgages and state and county tax liens already on the property as well as the condition of the property, which required renovations before it could be sold." (*Id.* at 28.)

Appellants, however, do not provide any evidence suggesting an alternative value of the Property. And Appellant Tyler explicitly stated that he received cash proceeds of $313,206. On this record, the government satisfactorily established the amount of net proceeds realized by Appellant Tyler when he sold the Property.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's order granting the government's motion for summary judgment and its order granting judgment in the amount of $156,603 to the government.